JOSEPH C. BUTLER v. CINCINNATI.

1. MUNICIPALITIES HOLD STREETS IN TRUST FOR STREET PURPOSES—NATURE OF TITLE.

Municipalities own the land between street lines in trust for street purposes, but their title thereto is not a fee simple, but rather in the nature of a base, qualified, or determinable fee; and so long as the purpose for which it is vested with title is maintained, its estate therein is coextensive with the fee title of the owner of any other property. Hence, all property rights existent in land held by such a title, both above and under the surface, follows the fee and belongs to the municipality, subject to the abutting owners' property rights of ingress and egress.

2. STRINGING ELECTRIC WIRES BENEATH STREET NOT A PROPERTY RIGHT OF ABUTTER.

The stringing and maintaining by an abutting owner of permanent electric wires under the street surface at a depth of nineteen feet for the purpose of supplying electricity to premises abutting on the opposite side of the street, is not within the abutting owner's property right of ingress and egress, and cannot be done as a matter of right. (Giffen, J., dissents.)

Butler v. Cincinnati.

3. Municipal Use and Control of Streets, Defined by Sec. 3471a Rev. Stat.

The scope and extent of a municipal corporation's use and control of land between street lines for street purposes can only be defined by the municipality itself or the state, and not by the abutting property owners. Hence, Sec. 3471a Rev. Stat., declaring, either for proprietary or police purposes, that the stringing of electric wires in the space between street lines, no matter how high above or far below the surface, shall be deemed within the municipality's property and jurisdiction, and that the same shall not be done without its consent, defines the scope and extent of the municipality's use and control thereof, subject only to the limitation that such occupancy shall not trespass upon the property rights of abutting owners.  (Giffen, J., dissents.)

4. Removing Wires Strung Beneath Street Without Municipal Consent Not Enjoined.

Injunction will not lie to restrain a municipality, its officers and agents, from removing electric wires strung below the surface of a street and there maintained for over two years by an abutting property owner without the consent of the municipality as provided under Sec. 3471a Rev. Stat.  (Giffen, J., dissents.)

## GIFFEN, J.

The plaintiffs seek to enjoin the defendants from cutting and removing certain wires maintained by the plaintiffs under and across Thorpe alley, at a depth of nineteen feet below the surface, for the purpose of supplying electricity to the premises of A. S. Taft from the premises of the plaintiff, each abutting upon said alley.

There is no substantial difference in the right of an abutting owner in the alley whether he or the city holds the title in fee. He has a property interest in the alley adjoining his lot which cannot be taken against his will except upon the terms provided by the constitution. Callen v. Electric Light Co. 66 Ohio St. 166 [64 N. E. Rep. 141; 58 L. R. A. 782].

His essential right is an easement in the alley appendant and appurtenant to his lot for ingress and egress. This includes the right to convey by horse and wagon or other suitable means such materials as he may require for the use and occupancy of his premises; and so long as he does not interfere with the right of the city and the public to the free and uninterrupted use of the alley, they cannot complain of the material thus conveyed nor of the means employed to accomplish it.

The wires are used to convey electricity from one to the other of the two abutting lots alternately. And while the mode of conveyance and the material carried are different in kind, they do not differ in principle, as applied to the right of ingress and egress, from the conveyance of coal and other materials by horse and wagon from one lot to the other for the purpose of generating electricity. The fixed and permanent nature of the conduit is no legal objection to its maintenance, unless it does now or probably will in the future materially interfere with the use of the alley by the public.

It is averred in the petition and not denied in the answer:

"That said wires are many feet below all water and gas pipes and all sewers and conduits which have been laid or will hereafter be laid in said alley; that said wires have been maintained under said alley for more than two years; that the maintenance of said wires in such place and at the great depth of nineteen feet has in no way interfered with the use of said alley by the public or by the city of Cincinnati; that the continued maintenance of said wires at such depth cannot at any time interfere with the use of said alley by the public or by the city or its board of public service or its successors, or any agent or officer of said city, for any municipal purposes or use whatever."

This being true, the plaintiffs, by maintaining the wires, are infringing upon no right of the city or of the public; but are exercising a right incident to their easement of ingress and egress.

If the doctrine contended for by the city is the law, then an abutting owner may not lay a pipe in the pavement to drain the water from his house to the gutter; nor excavate the ground under the pavement for purposes of storage; nor construct a bay window that will project over the pavement, although nineteen feet above the surface of the ground, each of which obstructions would more likely interfere with the public use of the street or alley than an underground wire.

Every individual's property is subject to proper and reasonable police regulations, as was attempted by Sec. 3471a Rev. Stat.; but applied to the facts admitted by the pleadings in this case the inhibition of the statute is not only unreasonable, but, without just cause, deprives the abutting owner of land of a substantial property right.

## JELKE, J.

The nature of the title of a municipality in its streets has been much in doubt until recently. The New York elevated railroad cases have defined this ownership, and the Supreme Court of Ohio has adopted the modern doctrine in this regard in the cases of Callen v. Electric Light Co. 66 Ohio St. 166, 173 [64 N. E. Rep. 141; 58 L. R. A. 782], and Hamilton, G. & C. Trac. Co. v. Parish, 67 Ohio St. 181, 190 [65 N. E. Rep. 1011; 60 L. R. A. 531].

It is now settled that the city owns its streets in fee, not in fee simple, but has a base, qualified, or determinable fee. The qualification of such fee is that the city owns the land between street lines in trust for street purposes. A "qualified fee" is defined by Blackstone:

"This estate is a fee, because by possibility it may endure forever in a man and his heirs; yet as that duration depends upon the concur-

rence of collateral circumstances, which qualify and debase the purity of the donation, it is therefore a qualified or base fee.''

So long as the city maintains the purposes for which it is vested with title, this estate is a fee and as such coextensive with a fee title in any owner of any other property.

This estate, of course, is subject to the property right of the owner of abutting property of ingress and egress. All property rights existent in the land between street lines and over and above the property rights or easement of the abutting property owner must follow the fee and belong to the municipality.

I agree that if plaintiffs' right to maintain the wire in question exists at all, it must subsist in being a part of the abutting property owners' right of ingress and egress. I do not think, however, that the establishment of a fixed wire is within this right of ingress and egress as those words are commonly understood. Bay, oriel windows, cellar extensions under the sidewalk, and gutter pipes, have in many instances been permitted to remain unchallenged. But they do not exist by virtue of any property right of the abutting property owner, but by the indulgence of the municipality.

I cannot follow the case of Henry v. Cincinnati, 25 O. C. C. 178, for the reason that I do not think that it recognizes what is now the accepted modern doctrine as to municipal ownership in streets.

Such being the estate of the city, if, however, the city's control is to be limited to street purposes, only the scope and extent of such uses are to be defined by the municipality or the sovereign state and not by the abutting property owner.

If the state sees fit, as it has done in Sec. 3471a Rev. Stat., either for proprietary or police purposes, to declare that the stringing of wires in the space between street lines, no matter how high above or far below the surface shall be deemed within the city's property and jurisdiction, such declaration defines the city's occupation and makes the limit, always provided that it does not trespass upon the private property rights of the abutting owner.

''Provided, however, that in order to subject the same to municipal control, alone, no person or company shall place, string, construct or maintain any line, wire fixture or appliance of any kind for conducting electricity for lighting, heating or power purposes through any street, alley, lane, square, place or land of any city, village or town, without the consent of such municipality; and this inhibition shall extend to all levels above and below the surface of any such public ways, grounds or places, as well as along the surface thereof.''

It is extremely difficult to define exactly what shall be included within the abutting property owner's right of ingress and egress. All of the uses cannot, with certainty, be enumerated, and there is no exact rule of law to determine just what uses are within and without such right. But it does not seem to me that the stringing of a permanent wire across the street or to the middle thereof to meet a wire from the other side of the street at any height above or depth below the surface, is within the meaning of these terms as they are understood, in dividing a piece of ground into streets and abutting lots.

As it is within the power of the city through the police department to · remove anything improperly and illegally in the streets, I am of opinion that an injunction should be denied.

The two judges who sat at the hearing of this case, being unable to agree, as shown above, the same was submitted to Judge Swing, who is of opinion that Sec. 3471a Rev. Stat. controls, and that an injunction should not be granted.

The order of the court will therefore be that plaintiff's petition be dismissed.

## DESCENT AND DISTRIBUTION—WILLS—HUSBAND AND WIFE.

[Cuyahoga (8th) Circuit Court, July 25, 1903.]

Marvin, Winch and Laubie, JJ.

(Judge Laubie of the Seventh Circuit sitting in place of Judge Hale of the Eighth Circuit.)

JOHN COON, EXR., v. WILLIAM B. DEMOORE ET AL.

1. SECTIONS 4176 AND 5963 REV. STAT. CONSTRUED.

When the wife dies leaving a will in which no provision is made for her surviving husband, her estate will be treated to him as if she had died intestate within the meaning of Secs. 4176 and 5963 Rev. Stat. In such event the husband will be entitled to a distributive portion of her personal estate as though the wife had died intestate, notwithstanding under a strict construction of the statutes such portion could not be claimed.

2. COURT CANNOT MAKE WILL—MUST ASCERTAIN MEANING AND INTENTION FROM TESTATOR'S LANGUAGE.

Courts are without power to *make* a will, or substitute something else for any of its provisions; but it is their duty to ascertain the meaning and intention of testator from the language used, and then carry the same into effect if that can be done without violating the words of the will.

3. WILL CONSTRUED.

Where testator who was a beneficiary of certain real estate under the will of her first husband (which interest is admitted by the parties, and held